Ronald R. McHOSE, Appellant,

v.

PHYSICIAN & CLINIC SERVICES, INC., Appellee.

No. 94–1453.

Court of Appeals of Iowa.

March 27, 1996.

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for appellant.

James E. Gritzner and Joan Fletcher of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

Heard by SACKETT, P.J., HUITINK, J., and SCHLEGEL, Senior Judge.*

SCHLEGEL, Senior Judge.

Ronald McHose, D.O., is a family practice physician in Dallas Center, Iowa. McHose brought suit against Physician & Clinic Services, Inc. (PCS), a wholly owned subsidiary of Iowa Lutheran Hospital for, among other things, breach of contract. In July or August 1990, McHose met with Iowa Lutheran and PCS to discuss the possibility of opening a clinic in Grimes, which is nine miles away from Dallas Center. McHose made significant efforts to make the project viable. The trial court found the parties had entered into an agreement for the opening of a medical clinic in Grimes, and defendants do not dispute this finding.

The essential terms of the contract were set out in a 1991 letter signed by the parties and included: (1) a second physician would be hired for the Grimes clinic; (2) PCS would construct the building and sublease space to a pharmacy; (3) PCS would equip the clinic; (4) PCS would handle management and staffing of the clinic for the first two years; (5) at the end of the first two years, and again at the end of five years, McHose would have the option of purchasing the building and hard assets at a depreciated value; (6) a different management agreement could be negotiated after the initial two years; (7) PCS would contract with McHose as medical director at $15,000 per year; (8) McHose would work primarily out of his Dallas Center clinic, and the second doctor would work primarily out of the Grimes clinic, except that on one day per week they would switch locations; (9) McHose would be paid fifty percent of collections for his services at the Grimes clinic, and he would reimburse PCS forty dollars per hour for the second doctor's work at the Dallas Center clinic; and (10) the second

doctor would work a minimum of thirty-two hours per week in the Grimes and Dallas Center clinics.

PCS hired a general contractor, and the clinic was completed and ready for use by the end of 1991. Sometime after hiring a new president and CEO of Lutheran and PCS, PCS determined it needed to pursue new options for opening the Grimes clinic. PCS ultimately hired Dr. Kim Countryman, and she began practicing at the clinic in November 1992. McHose was no longer associated with the clinic in any manner.

The court awarded McHose $37,312 plus interest for the breach of the above contract. McHose filed a motion asking the court to reconsider the amount of damages, but the court refused to increase the award. McHose appeals, arguing the trial court erred in (1) failing to award more damages; (2) applying mitigation principles to the award; and (3) refusing to allow McHose to offer his opinion about the value of the Grimes clinic. Although PCS does not contest the court's conclusion that a contract was breached, PCS argues the record is insufficient to form any basis upon which to award additional damages. PCS further contends application of mitigation principles was proper and the court did not abuse its discretion in excluding plaintiff's testimony about the value of the Grimes clinic.

## I. Mitigation of Damages.

Our review is for errors at law. Iowa R.App.P. 4. The defense of mitigation or avoidable consequences must be both pleaded and proven by the asserting party. *R.E.T. Corp. v. Frank Paxton Co.*, 329 N.W.2d 416, 422 (Iowa 1983). If this special defense is not pleaded and proved, defendant is limited to circumstances growing out of plaintiff's testimony. *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 233 (Iowa 1985). Here, PCS did not plead failure to mitigate as a defense, nor did it plead that any other sums should be deemed paid in mitigation of this claim. *See id.* The trial court, however, used mitigation principles in

* Senior Judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

calculating damages. We determine the trial court erred because it applied mitigation principles without limiting its application to the circumstances growing out of plaintiff's testimony.

In rejecting McHose's claimed loss of $15,000 for the two years he was not allowed to serve as medical director, the trial court stated, "McHose had a duty to mitigate damages by working elsewhere, which he has done at the Dallas Center clinic. Thus McHose has failed to prove any loss by virtue of not receiving the salary as medical director." McHose also claimed damages for his inability to work in the Grimes clinic one day per week to receive fifty percent of the collections for services performed that day. This claim, as well as McHose's claim for certain revenue from the Grimes clinic doctor working at the Dallas Center clinic one day a week, was denied. The trial court stated, "The breach by PCS has allowed McHose to work full time at Dallas Center, thus covering any damages from not working in Grimes."

The trial court completely denied damages for the lost $15,000 salary, lost collections, and lost revenue. After review of the record, we find the plaintiff's testimony did not establish working in Dallas Center fully mitigated the above damages. Nothing in plaintiff's testimony reveals whether McHose was able to work an amount equivalent to offset the damages sustained as a result his lost association with PCS. Plaintiff never testified about the hours he worked in Grimes, how many hours he would have worked had the contract not been breached, or whether he was able to fully utilize in a revenue-generating way the time freed up by PCS's breach of contract. As such, the trial court's application of mitigation principles in the above instances was error.

## II. McHose's Testimony About the Value of the Clinic.

■ We review the trial court's determination as to admissibility of evidence for abuse of discretion. *Miller v. Bonar*, 337 N.W.2d 523, 528 (Iowa 1983). The trial court has broad discretion in determining the admissibility of evidence. *Gerace v. 3-D Mfg.*

*Co.*, 522 N.W.2d 312, 319 (Iowa App.1994). On appeal, we reverse for an abuse of discretion "only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

■ Iowa, however, is committed to a liberal rule on the admission of opinion evidence. *Miller*, 337 N.W.2d at 528. Opinion evidence is not inadmissible alone on the ground that it is an opinion; some specific defect or reason for its exclusion must be called to the court's attention. *In re Long*, 313 N.W.2d 473, 480 (Iowa 1981). Iowa Rule of Evidence 602 states a witness may testify to a matter if he has personal knowledge of the matter. Opinion testimony is allowed if it will aid the factfinder and is based on special training, experience, or *knowledge* with respect to the issue in question. *Miller*, 337 N.W.2d at 528 (emphasis added).

■ The district court held McHose was able to give opinion testimony as to the value of equipment at the Grimes clinic. The court stated McHose had the requisite competency to testify to the value and the necessary foundation had been laid for such testimony. However, in sustaining PCS's objection based on lack of foundation, the district court did not allow McHose to give opinion testimony about the projected value of the building five years after it was constructed. We find there was sufficient evidence to prove McHose had personal knowledge concerning the projected value of the building and the trial court abused its discretion in refusing to admit McHose's testimony.

Our courts have held owners of real estate can properly express their opinion as to its value. *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380–81 (Iowa 1983). Although McHose is not the owner of the property at issue, his knowledge of the property is equivalent to that of an owner. Evidence indicates McHose has special experience and knowledge which could aid the factfinder in determining the value of the clinic. McHose had the Grimes clinic constructed by the same contractor who built his Dallas Center clinic a few years earlier. McHose worked with the same man on both projects. During

the nine months of the clinic's construction, McHose worked with the contractor on a regular basis. McHose had knowledge of the original value of the building when it was constructed. Then McHose used the depreciation schedule to which he and PCS agreed in determining the depreciated value of the building after the five-year period. Furthermore, McHose owns a similar medical clinic, built by the same company, in a rural community nine miles from the Grimes clinic. McHose is aware of the current value of his Dallas Center clinic. He is familiar with the internal and external set-up of both clinics, and has knowledge about the differences between the two.

We find there was sufficient foundation laid to permit McHose to give opinion testimony as to the value of the clinic. As such, the trial court abused its discretion in refusing to allow the testimony.

### III. Adequacy of the Damages Award.

An inadequate damage award merits a new trial as much as an excessive one. *Witte v. Vogt*, 443 N.W.2d 715, 716 (Iowa 1989). We review this question to correct an abuse of discretion. *Id.* Thus, when the verdict is manifestly inadequate, we consider the refusal of the district court to grant a new trial an abuse of discretion that is subject to reversal. *Id.* Similarly, the refusal to grant additur can be an abuse of discretion when the verdict is inadequate. *See Nassif v. Pipkin*, 178 N.W.2d 334, 338 (Iowa 1970). The question of whether damages in a particular case are inadequate turns on the particular facts of the case. *Witte*, 443 N.W.2d at 716. If uncontroverted facts show the amount of the verdict bears no reasonable relationship to the loss suffered, the verdict is inadequate. *Id.*

PCS's breach of contract caused McHose to suffer damages in the following forms: (1) lost two-year directorship; (2) lost collections for services rendered in Grimes; (3) lost revenue from the Grimes clinic doctor working in Dallas Center; and, (4) inability to acquire the building and equipment on a depreciated basis after a five-year period.

We determine the trial court abused its discretion in refusing to grant additur. In our view, $37,312 bears no reasonable relationship to the above elements of damages. *See id.* Considering the extent of McHose's damages, we find the trial court failed to properly evaluate these elements and thereby failed to do substantial justice. *See id.* at 716–17. Although McHose requested this court enter a judgment for the full amount of damages he believes was proven, our review is not de novo and does not allow us to make such a determination. As such, this case is reversed and remanded for a new trial on the issue of damages only.

**REVERSED.**