675 So.2d 584 (1996)
CITIZENS NATIONAL BANK AND TRUST COMPANY, et al., Petitioners,
v.
Loue E. STOCKWELL, Jr., et al., Respondents.
No. 85923.
Supreme Court of Florida.
June 13, 1996.
*585 Gary L. Sasso, Sylvia H. Walbolt and Victor D. Berg of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for Petitioners.
F. Wallace Pope, Jr. and Duane A. Daiker of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, for Respondents.
HARDING, Justice.
We have for review the decision in Stockwell v. Citizens National Bank and Trust Co., 655 So.2d 1220 (Fla. 2d DCA 1995) which certified conflict with the opinion in International Bank of Miami v. Bennett, 513 So.2d 1294 (Fla. 3d DCA 1987) cert. denied, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Citizens National Bank and Trust Company ("CNB") seeks review of a decision of the Second District Court of Appeal holding that the National Bank Act does not preclude enforcement of severance benefits contained in officers' employment contracts. For the reasons expressed below, we approve the district court's decision.
CNB is a national bank by authority of the Office of the Comptroller of the Currency (OCC). In 1988, Respondents Stockwell and Larose entered into employment contracts with CNB as executive officers. As amended in 1990, the contracts provided for a ten-year term of employment commencing in February 1988. Stockwell and Larose were aware of the National Bank Act and accordingly agreed to a clause in their contracts which permitted termination without cause. If this occurred, CNB was obligated to pay each executive an amount equal to his base salary for the remainder of the term of the contract, either in lump sum or in monthly installments for the remainder of the contract term. The contracts also contained stock options and other benefits which would accrue in the event of termination. The OCC approved the form of the contracts in 1993.
In September 1993, CNB notified Stockwell and Larose that they had been terminated without cause: another bank was merging with CNB, and had offered CNB a higher price per share if it could be done without purchasing CNB's existing employment contracts. CNB requested that Stockwell and Larose execute releases in exchange for stock options and deferred compensation plans; they refused. CNB did not pay the wages, severance pay, and benefits required under the contracts.
That same month, Stockwell and Larose filed an action against CNB and its directors challenging the bank's actions in terminating, refusing to honor, or interfering with their employment agreements. CNB filed a motion to dismiss on grounds that the National Bank Act, 12 U.S.C. § 24, para. 5 (1988), precluded their claims. Six of the seven counts asserted claims grounded in state law.
The circuit court dismissed the amended complaint, holding that all six of the state law counts were preempted by the National Bank Act. The circuit court followed the Third District Court of Appeal's opinion in International Bank of Miami v. Bennett, 513 So.2d 1294 (Fla. 3d DCA 1987) (holding that the National Bank Act preempts state law claims challenging termination of national bank officers and voids a contractual promise to pay severance upon early termination). Stockwell and Larose did not further amend the complaint, but instead stipulated to entry of a final order of dismissal with prejudice.
On appeal, the Second District Court of Appeal affirmed the dismissal of all the counts but onebreach of contract. This count alleged that CNB breached its contract with Stockwell and Larose by refusing to pay the severance benefits set out in the contract. *586 The district court disagreed with Bennett and certified conflict to this Court.
Petitioners argue that to enforce the provisions of the contracts would directly contravene the National Bank Act by limiting the unfettered discretion of national banks to dismiss or replace officers at will. They argue that the severance provisions in the instant case would functionally entitle Stockwell and Larose to exactly the same benefits and wages they are precluded from recovering as damages under the Act. Stockwell and Larose argue that the Act does not limit the right to contract for the severance benefits at issue. We agree.
The National Bank Act provides, in relevant part, that a properly created national bank shall have the power "to elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." 12 U.S.C. § 24, para. 5 (1994).[1] Respondents also urge us to consider a regulation expanding on this section of the Code: "The board of directors of a national bank, pursuant to the fifth paragraph of 12 U.S.C. 24, may enter into employment contracts with its officers and employees upon reasonable terms and conditions." 12 C.F.R. § 7.5220 (1995).[2]
We do not agree with CNB that the severance provisions at issue tie the hands of the bank or effectively allow Stockwell and Larose to sue for damages based on their termination. Nor do we agree with CNB's assertion that a suit for damages based on wrongful termination is the same as a claim for breach of a contract to pay severance benefits. The contracts do not limit the ability of the bank to fire its officers: CNB can still fire its officers at will without giving rise to suits for damages based on the termination. Stockwell and Larose do not challenge the bank's decision to terminate their employment; they only challenge CNB's failure to honor the severance package negotiated under the contract.
CNB is free to enter contracts for employment without agreeing to payment of severance benefits on termination. But here, CNB expressly agreed that if it chose to terminate Stockwell and Larose, it would pay them certain severance benefits. The bank voluntarily used the promise of those benefits as one bargaining tool to secure Stockwell and Larose's continued employment during the five years before termination. Both parties having entered into and been bound by those contractual provisions, CNB cannot now unilaterally determine it will no longer be bound by the terms of the contract to the detriment of the other party.
Because there is no limitation on the power of a bank to remove its officers, this result is completely consistent with the provisions of the National Bank Act. Petitioner cites a Ninth Circuit decision as providing insight into the Act: the purpose of the fifth paragraph of section 24 "was to give [national banks] the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust." Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 526 (9th Cir.1989). "Public trust" is assuaged by filling major decision-making positions with individuals the bank deems more capable than those it terminates; the contracts at issue do not prevent the bank from so doing.
Our decision that such contractual severance provisions do not undermine the intent of the Act is further supported by section 7.5220's explicit recognition that banks can enter into employment contracts with officers and employees "upon reasonable terms and conditions." Limiting the discretion of the bank to fire officers would constitute an unreasonable condition, but Stockwell and Larose *587 do not challenge the ability of the bank to terminate them: they only fault the bank's failure to honor its contractually negotiated severance benefits.
The Second District Court of Appeal correctly refused to follow Bennett. That case, as well as the cases from other jurisdictions cited in CNB's brief, implicitly adds language to the National Bank Act which does not explicitly appear. Those courts read "dismiss at pleasure" as not only allowing banks to dismiss unwanted officers at pleasure, but also as allowing banks to void any contractually negotiated severance benefits. We see no such language in the Act; we rely, rather, on the statute's plain and explicit meaning. See Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393, 395 (Fla.1990) ("The plain meaning of statutory language is the first consideration of statutory construction."). This Court has recognized that certain otherwise valid contracts can be void as against public policy or in violation of a statute, but only where the facts clearly establish a conflict. See, e.g. Chandris v. Yanakakis, 668 So.2d 180 (Fla. 1995); Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993). Here, however, there is none. The statute requires that banks retain the power to terminate officers at will: CNB retains that power even though it must honor the severance contracts.
CNB cannot have the proverbial cake and eat it too. We do not read the National Bank Act to permit national banks to hold out lucrative contractual provisions in order to entice officers to work for them, and then hide behind a tenuous interpretation of the Act to get out of those provisions when they no longer need the officers. We find nothing in the underlying statute to compel us to hold otherwise.
For the reasons expressed, we approve the decision of the Second District Court of Appeals and disapprove Bennett.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] This section of the code is the same today as when Stockwell and Larose executed their contracts.
[2] We recognize that the OCC removed the regulation from part 7 effective April 1 of this year. The OCC stated that other provisions make it clear that "the current `reasonable' standard is necessarily in effect, so it is unnecessary to reiterate the standard in this interpretive ruling." 61 Fed.Reg. 4849, 4860 (1996). We do not rely on the regulation in reaching our decision, but because of the OCC's statement, and because the regulation was in existence at the times in question, we use it as one more indicator of the intent behind the code section at the relevant times.