**IN THE COURT OF APPEALS OF IOWA**

No. 22-1377
Filed November 21, 2023

WILLIAM S. WOLLESEN, IOWA PLAINS FARMS, BYRITE FARM SUPPLY, INC., KRISTI J. WOLLESEN, and JOHN W. WOLLESEN,
    Plaintiffs-Appellants,

**vs.**

WIXTED, INC., d/b/a WIXTED POPE NORA THOMPSON, WIXTED POPE NORA THOMPSON & ASSOCIATES, LLC, JEFF PIGOTT and EILEEN WIXTED,
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        Plaintiffs appeal the district court's grant of summary judgment in favor of

the defendants.  **AFFIRMED.**


        Joel D. Vos and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City,

and Samuel L. Blatnick of Lucosky Brookman LLP, New York, New York, for

appellants.

        Andrew C. Johnson of Lamson Dugan & Murray LLP, West Des Moines, for

appellees.


        Heard by Greer, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

The path to this appeal is complicated. We provide a simplified background.

For several years leading up to 2011, West Central Cooperative ("WCC") employee Chad Hartzler defrauded WCC.[1] Part of Hartzler's scheme involved WCC customers William Wollesen, Kristi Wollesen, John Wollesen, and their companies, Iowa Plains Farms and Byrite Farm Supply, Inc., (collectively "the Wollesens"). Hartzler had the Wollesens prepay for WCC products at a reduced price and make payments to him personally. Hartzler then kept the funds for his personal use. As the payments made by the Wollesens went to Hartzler rather than WCC, the scheme created a growing balance in the Wollesens' account at WCC.[2]

After Hartzler confessed the fraud in April 2011, WCC hired Wixted, Inc. ("Wixted") to help with communications strategy. On May 12, 2011, WCC filed suit against Hartzler and the Wollesens. WCC alleged the Wollesens had bribed

---

[1] In an appeal in prior litigation that relates to this case, our supreme court noted that WCC is an agricultural cooperative owned by farmers, and Westco Agronomy Co., L.L.C. ("Westco") is a wholly owned subsidiary of WCC. *Westco Agronomy Co. v. Wollesen*, 909 N.W.2d 212, 215 (Iowa 2017). The supreme court also noted that Hartzler was employed by Westco rather than WCC. *Id.* Despite that note, the parties in this appeal consistently refer to Hartzler as being an employee of WCC and make no distinction between WCC and Westco. As the distinction between Westco and WCC is immaterial to the issues in this appeal, we follow the parties' lead in referring only to WCC to refer collectively to WCC and/or Westco without making any distinction between the two entities. We do so for simplicity's sake. We make no finding as to which entity employed Hartzler, and this opinion should not be read as declaring any rights or responsibilities for which a distinction between WCC and Westco would be important.

[2] A more detailed explanation of Hartzler's scheme can be found in the supreme court case between the Wollesens and WCC. *See Westco*, 909 N.W.2d at 215-17.

Hartzler to receive lower prices.[3]  One of the Wollesen entities filed a counterclaim. Wixted assisted WCC in preparing several statements and documents over the course of 2011 to communicate the fraud issue to employees and members and to inform them of the lawsuit.  The documents very generally mentioned wrongdoing by Hartzler and the Wollesens without naming them.  For example, Wixted helped WCC prepare a letter to its members stating that WCC brought a lawsuit against "a former employee and a farm operation."  Another document— used as internal preparatory material for an upcoming townhall meeting—mentions a "deceptive duo" and "devious partnership that was only able to succeed because an employee and customer worked together."  Media coverage of the lawsuit did mention the Wollesens by name.

The lawsuit went to jury trial.  The jury awarded WCC damages against Hartzler but found WCC failed to prove its claim against the Wollesens.  The jury also awarded significant compensatory damages against WCC to the Wollesen entity that filed the counterclaim.  After receiving the verdict, WCC issued a press release on August 7, 2014.  The press release expressed WCC's disappointment in the outcome of the trial and attempted to explain its decision to bring the lawsuit.

In February 2016, the Wollesens commenced a federal lawsuit against WCC and Wixted.[4]  The lawsuit asserted several causes of action, including claims

---

[3] The lawsuit included claims against Hartzler and the Wollesens for commercial bribery, theft, conversion, breach of fiduciary duty, breach of duty of loyalty, ongoing criminal conduct, unjust enrichment, and foreclosure of an agricultural supply dealer lien.  The suit sought compensatory and punitive damages.

[4] The Wollesens sued Wixted, Inc. as well as two of its principals, Eileen Wixted and Jeff Pigott.  For ease of reference, we will continue to refer to the corporation, as well as the individual defendants, as Wixted.

for defamation and aiding and abetting breach of fiduciary duty. The Wollesens settled their claims against all defendants except Wixted. As a result of the settlement, the federal court lost diversity jurisdiction, and the Wollesens refiled in Iowa district court.[5]

Wixted moved for summary judgment. Wixted argued the Wollesens' claims are subject to the two-year limitation period set by Iowa Code section 614.1(2) (2016), and since more than two years had passed since the last statement capable of a defamatory meaning was published in June 2011, the claims were time-barred. The Wollesens resisted. They claimed the aiding-and-abetting-breach-of-fiduciary-duty claim is governed by the five-year limitation period of section 614.1(4). They also argued that, even if a two-year limitation period applied, the last defamatory statement was the August 7, 2014 press release, which would not be time-barred.

The district court granted Wixted's motion. It found as a matter of law that the press release was not defamatory, and therefore, even though the statements

---

[5] While the record is not entirely clear on the procedural history, the parties appear to agree on the history. Specifically, they appear to agree that the Wollesens originally sued in Iowa district court in 2015 and then voluntarily dismissed that suit. The Wollesens then sued in federal court in February 2016. When WCC settled in 2019, the federal court lost diversity jurisdiction, so the federal action was dismissed. Just under six months later, the Wollesens refiled in Iowa district court. We use the February 2016 date to determine whether the limitation period has expired. *See* Iowa Code § 614.10 (2020) ("If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall be held a continuation of the first."); *Wetter v. Dubuque Aerie No. 568 of the Fraternal Order of Eagles*, 588 N.W.2d 130, 132 (Iowa Ct. App. 1998) (finding Iowa Code section 614.10 applied to save a state action because, even though the federal action was dismissed for lack of subject matter jurisdiction due to the plaintiff's miscalculation of a necessary jurisdictional fact, the dismissal was not due to negligence in prosecution).

in the press release were made within the limitation period, they were not actionable. The court found that any other claims for defamation dated back to statements made in 2011, so they were time barred. As to the claims for aiding and abetting breach of fiduciary duty, the district court found the claims were based on defamation and subject to the same two-year limitation period under Iowa Code section 614.1(2) rather than the five-year limitation period under section 614.1(4). As more than two years had passed since the last potential defamatory statement was made when the suit was filed, the court dismissed the claims on statute-of-limitations grounds. The Wollesens appeal on their claims for defamation and aiding and abetting breach of fiduciary duty.

## I.     Standard of Review

We review summary judgment rulings for correction of errors at law. *Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 488 (Iowa 2021). We review the record in the light most favorable to the Wollesens—the party opposing summary judgment—and consider all reasonable inferences that can be made on their behalf. *See Serv. Emps. Int'l Union, Loc. 199 vs. Iowa Bd. of Regents*, 928 N.W.2d 69, 74 (Iowa 2019). Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Andrew*, 960 N.W.2d at 488.

## II.     Applicable Limitation Period

We first address the parties' dispute over the applicable limitation period. When the parties dispute which limitation period should apply to a claim, we must decide which of the actions described in Iowa Code section 614.1 "most nearly characterizes the action before the court." *Scott v. City of Sioux City*, 432 N.W.2d

144, 147 (Iowa 1988). To do that, we assess only the foundation of the action. *Legg v. W. Bank*, 873 N.W.2d 763, 774 (Iowa 2016). We do not decide based on the label placed on the claim by the plaintiff, *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 411 (Iowa 1993), or the alleged injury. *Brown v. Liberty Mut. Ins. Co.*, 513 N.W.2d 762, 765 n.1 (Iowa 1994) ("[W]e . . . reject the dichotomy . . . that we would apply different limitation periods depending on the nature of the alleged injury."). However, we remain cognizant that the type of injury cannot be completely disregarded, as some limitation periods "are tied to the legal source of the right or obligation sought to be enforced while others are tied to the type of loss or injury for which recovery is sought." *Scott*, 432 N.W.2d at 147.

There are two causes of action at issue here—a defamation action and an action for aiding and abetting breach of fiduciary duty. As to the defamation action, "[t]he gravamen or gist . . . is damage to the plaintiff's reputation." *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am. Jur. 2d *Libel and Slander* § 2, at 338–39 (1995)). The nature of breach of fiduciary duty in this context is whether WCC fiduciaries failed to act with care, good faith, and in the best interests of the cooperative. *See* Iowa Code § 499.36A(1). Aiding and abetting adds only the requirements that the Wollesens prove Wixted knew the conduct of WCC's principals constituted a breach of fiduciary duty and that Wixted provided substantial assistance or encouragement in the commission of the breach. *See Tubbs v. United Cent. Bank, N.A.*, 451 N.W.2d 177, 182 (Iowa 1990).

The district court granted summary judgment on both claims, finding both to be governed by the two-year limitation period in section 614.1(2). It reasoned

that the aiding-and-abetting claim was essentially just the defamation claim by another name, and therefore should fall under the two-year limitation period for defamation. The Wollesens claim the district court erred because they suffered financial injury, and not just reputational harm, so the claim for aiding and abetting breach of fiduciary should be governed by the five-year limitation period of section 614.1(4).

In support of their argument, the Wollesens point to several incidents to try to separate the two claims. First, they argue, "Plaintiffs were expelled from membership of WCC and the narrative that Plaintiffs gave hundreds of thousands of dollars in bribes to Hartzler was widely publicized." But the Wollesens' expulsion from WCC is not explicitly attributed to Wixted—in fact, the Wollesens point to no facts suggesting Wixted had any part in that decision. Nor can we look at this as separate from their defamation claim, as the Wollesens present it hand in hand with their claim that Wixted helped publish libelous material.

The second incident the Wollesens rely upon is Wixted's advice to WCC cautioning against firing Hartzler's supervisor to avoid the inference that other co-op leaders should have been aware of Hartzler's fraud. The thrust of this argument is that Wixted assisted WCC in "scapegoating" the Wollesens for the purpose of "divert[ing] attention away from [WCC leadership's] malfeasance." But this is just a piece of the larger puzzle making up the defamation claim, as it focuses on the alleged goal of placing blame and attention on the Wollesens to keep the same blame and attention away from WCC leaders. *See Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 230 (Iowa 2006) ("[A] claim is not founded on a written contract merely because . . . the instrument would be a link in the chain of

evidence establishing the cause of action." (citation and internal quotation marks omitted)).

Finally, the Wollesens argue their claim is separate because they suffered financial, not just reputational injury, from Wixted's actions. The claimed injuries are the loss of the financial benefit from WCC membership and the legal fees from the "improper" lawsuit brought against them. But it is the nature of the claim, not the nature of the injury, that guides our decision. *Brown*, 513 N.W.2d at 764, 765 n.1. And as the district court aptly observed, "the plaintiffs . . . cannot establish liability for any of their claims against [Wixted] without first establishing that [Wixted] published allegedly defamatory statements against the [Wollesens]." Because the Wollesens' aiding-and-abetting-breach-of-fiduciary-duty argument rests on the alleged attack on their reputation, we agree with the district court that it is subject to the two-year limitation period in section 614.1(2).

Due to our conclusion that the Wollesens' claims are governed by a two-year limitation period, we look only at the alleged tortious conduct of Wixted occurring in the two-year window before suit was filed. Within that period, the only alleged tortious conduct by Wixted is the alleged defamation by the August 7, 2014 press release. So we turn our attention to that document as the sole remaining basis for the Wollesens' claims.

### III. The Press Release

In its entirety, the press release at issue reads:

> We are surprised by, and disagree with, the verdict based on all of the evidence. **We continue to believe, along with our farmer-members and employees, that this is not how business should be done**.

West Central denies that it committed any fraudulent acts against Iowa Plains Farms/Wollesen's [sic].

We had confidence in the facts of our case. We intend to pursue all appropriate legal means available, up to and including appeal.

**When we filed the lawsuit, we felt it was our responsibility to protect the integrity of the agricultural marketplace, the cooperative system, and our business**. We still believe this to be true today.

(Emphasis added.)

The Wollesens focus their argument on the highlighted statements.[6] They claim these statements imply their actions are outside the bounds of how businesses in the agricultural community should operate, that they lack integrity, and that they are "bad actors who threatened the integrity of the entire agricultural marketplace and the cooperative system."

Before going into the legal analysis, we first note the role of the courts in addressing defamation claims. If there are multiple reasonable interpretations of a statement, one of which is not defamatory and one of which is defamatory, the question of whether the statement is defamatory is to be answered by the jury. *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 418 (Iowa 1997). However, "[w]hether a statement is capable of a defamatory meaning is a question for the court." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). With that delineation of duties in mind, we turn to the challenged statements.

---

[6] The record shows that, in addition to the press release quoted here, WCC also sent a letter to WCC employees. While the wording of the letter differs somewhat from the press release, including the wording of the alleged defamatory statements, in substance the letter is the same as the press release. At oral argument, the Wollesens' counsel clarified that they were relying on the statements in the press release as the basis for their claim, so we limit our analysis to the statements in the press release.

To prevail on their claim that the highlighted statements were defamatory, the Wollesens must prove Wixted published the statements, the statements were defamatory, and the statements were about the Wollesens. *See Andrew*, 960 N.W.2d at 489. Although it is uncertain whether Wixted had anything to do with publishing the press release, we will assume for the sake of discussion that it did. The question then becomes whether the challenged statements were defamatory.

To be defamatory, a statement cannot be an opinion, because opinions are "absolutely protected under the First Amendment." *Id.* (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 177 (Iowa 2004), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 669, 708 n.3 (Iowa 2016)). To be defamatory, the challenged statements in the press release must be capable of being reasonably interpreted as stating facts about the Wollesens. *See Bauer*, 958 N.W.2d at 198 ("Statements that cannot be reasonably interpreted as stating actual facts about a person are not actionable as defamation."). We apply a four-factor test to determine whether a statement is opinion. *Id.* First, we look at "whether the alleged defamatory statement 'has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous.'" *Id.* (quoting *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018)). "Second, we consider to what degree the statement is 'objectively capable of proof or disproof.'" *Id.* (quoting *Bandstra*, 913 N.W.2d at 47). "Third, we examine 'the context in which the alleged defamatory statement occurs.'" *Id.* (quoting *Bandstra*, 913 N.W.2d at 47). "Fourth, we contemplate 'the broader social context' the alleged defamatory statement fits into." *Id.* (quoting *Bandstra*, 913 N.W.2d at 47).

As to the first challenged statement, even within the context of the events surrounding the statement and the context of the entire statement itself, it falls within the category of opinion. WCC is expressing a belief about how businesses should conduct themselves that is not capable of being proven true or false, so the statement is nonactionable opinion. *See, e.g.*, *Bandstra*, 913 N.W.2d at 48–49 (finding statements about whether alleged victims of sexual abuse and exploitation should be sent to jail were opinions not capable of being proven or disproven and therefore protected by the First Amendment). Nor does "[h]ow business should be done" have a "precise and verifiable meaning" that can "give rise to clear factual implications." *See*, *e.g.*, *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 773 (Iowa 2006) (finding the statement that a business did not receive a contract because they were "substandard and poor performers" did not have a precise and verifiable meaning that could make the statement provable and was therefore a nonactionable opinion). The Wollesens argue the context of the statement implicates them, but even assuming so, that context does not transform the statement into a provable allegation of fact with a precise meaning. *See Bandstra*, 913 N.W.2d at 47 (assessing the four factors distinguishing an opinion from a fact statement). Because the statement "[w]e continue to believe . . . that this is not how business should be done" is an opinion, it is not defamatory.

As to the second statement, the Wollesens claim it defames them by implying they have engaged in activities "threaten[ing] the integrity of the entire agricultural marketplace and the cooperative system." The Wollesens even go so far as to suggest that this may be defamatory per se. If a statement is defamatory per se, such as one that attacks a person's integrity or moral character, then there

is a presumption of injury and the burden shifts to the defendant to prove the statement could have a non-defamatory meaning. *Kiesau*, 686 N.W.2d at 175.

Here the statement does not even mention the Wollesens or the situation with Hartzler. But even if the parties to the suit were so well known that the audience would know to whom the press release referred, there is no reasonable interpretation of the statement that is defamatory. Rather, the clear meaning of the statement is that WCC initiated the lawsuit to maintain the strength or soundness of its business and its business community.[7] The press release was intended to explain the result of the lawsuit while attempting to justify starting a lawsuit with a costly outcome. The reading that the lawsuit was justified because WCC leaders felt it was necessary to keep the business financially sound makes more sense in that context. That is also the clear meaning in the context of the surrounding events. WCC had sued the Wollesens under numerous theories based on their connection to Hartzler's fraud. Both the context of the lawsuit and the statement read as a whole make the Wollesens' interpretation that the statement attacked their character for honesty unreasonable. This is not an instance of two reasonable interpretations. *See id.*; *Kerndt*, 558 N.W.2d at 418. Rather, there is only one interpretation a reasonable reader could make, which is

---

[7] The Wollesens place great emphasis on the use of the word "integrity," suggesting WCC called them dishonest. But "integrity" has more than one meaning. *See Integrity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/integrity (last visited Nov. 15, 2023) (providing definitions of "firm adherence to a code of especially moral or artistic values: INCORRUPTIBILITY," "an unimpaired condition: SOUNDNESS," and "the quality or state of being complete or undivided: COMPLETENESS"). It is clear from the challenged statement that "integrity" in this context is referring to the second definition of soundness. There is no reasonable way to interpret the press release's reference to integrity to be referring to the Wollesens' honesty.

that WCC justified the suit on the grounds that it thought it was doing what would be best for the market, the cooperative community, and its business at a financial level. There is simply no indication from the statement that WCC is making a claim about the integrity of the Wollesens. *Cf. Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 826, 831 (Iowa 2007) (finding the true statement in an article that a writer "rarely attended events upon which he wrote columns," which named the writer and stated the fact in a negative way, could reasonably be interpreted to imply the writer's work was untruthful).

The court's role is to determine whether the statement is capable of a defamatory meaning. *Bauer*, 958 N.W.2d at 198 ("Whether a statement is capable of a defamatory meaning is a question for the court."). The district court found that a reasonable person could not read the statement at issue and interpret it as an attack on the integrity of the Wollesens. We agree. The district court was correct in granting summary judgment to Wixted on the claims based on the 2014 press release—the only remaining basis for potential recovery that is not time-barred.

## IV.    Conclusion

We find no error in the district court's determination that the Wollesens' aiding-and-abetting-breach-of-fiduciary-duty claim rests entirely on claims based on defamation. As a result, both that claim and the defamation claim are subject to the two-year limitation period of section 614.1(2). We also find no error in the district court's conclusion that both challenged statements in the 2014 press release were not defamatory as a matter of law. As all other bases for recovery are time-barred, we affirm the district court's grant of summary judgment to Wixted.

**AFFIRMED.**