[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12289

_____

D.C. Docket No. 1:13-cv-23438-KMW

MARC WIERSUM,

Plaintiff - Appellant,

versus

U.S. BANK, N.A.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 5, 2015)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,* Judge.

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

FAY, Circuit Judge:

Marc Wiersum appeals the dismissal with prejudice of his alleged wrongful-termination action, filed under the Florida Whistleblower Act ("FWA"),[1] which the district judge determined was preempted by the National Bank Act ("NBA").[2] We affirm.

## I. BACKGROUND

On March 15, 2013, U.S. Bank, N.A., a federally chartered bank headquartered in Minnesota, hired Wiersum, a resident of Miami-Dade County, Florida, as a Vice President and Wealth Management Consultant for its Naples office. During his brief employment, Wiersum alleged he witnessed U.S. Bank condition credit upon asset management, in violation of 12 U.S.C. § 1972. He objected to certain activities he believed were "unlawful tying arrangement(s)" and refused to participate in them. Complaint at 2 ¶ 19. Following his objections, Wiersum alleged U.S. Bank treated him adversely by terminating his employment on May 31, 2013, in retaliation.

Wiersum filed a single-count complaint against U.S. Bank in the Southern District of Florida on diversity jurisdiction and alleged a violation of the FWA, Fla. Stat. § 448.102(3). U.S. Bank moved to dismiss Wiersum's complaint under Federal Rule of Civil Procedure 12(b)(6) for federal preemption. It argued

---

[1] Fla. Stat. § 448.102(3).

[2] 12 U.S.C. § 24 (Fifth).

Wiersum's FWA complaint was barred by the NBA, which permits federally chartered banks to dismiss officers "at pleasure." 12 U.S.C. § 24 (Fifth). Wiersum responded; U.S. Bank replied. The district judge concluded the FWA, prohibiting retaliatory personnel action by an employer, and the NBA are in direct conflict regarding the at-pleasure termination provision of the NBA. Wiersum did not move for reconsideration and appealed the dismissal with prejudice of his FWA case. Deciding whether the NBA preempts the FWA, concerning a state-employment contract, is a first-impression issue for our circuit.

## II. DISCUSSION

We review de novo a district judge's granting a motion to dismiss for failure to state a claim under Rule 12(b)(6), accept the complaint allegations as true, and construe them most favorably to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "[C]onslusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). We review de novo a district judge's interpretation of a statute. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).

3

A. <u>Federal Preemption</u>

"In pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (citing *Wyeth v. Levine*, 555 U.S. 555, 563, 129 S. Ct. 1187, 1193 (2009)).  The Supremacy Clause of the United States Constitution provides "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. Art. VI, cl. 2.  "[W]e have long recognized that state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543 (2008) (citation and internal quotation marks omitted); *see Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30, 116 S. Ct. 1103, 1107 (1996) ("[T]he Supremacy Clause requires courts to follow federal, not state, law.").

The Supreme Court has identified three circumstantial categories, where federal law preempts state law.  First is express preemption, where Congress defines "explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Electric Co.*, 496 U.S. 72, 78, 110 S. Ct. 2270, 2275 (1990).  "[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *Id.* at 79, 110 S. Ct. at 2275; *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. __, __, 131 S. Ct. 1968, 1977 (2011) (noting the plain wording of a federal statute "necessarily contains the best evidence of Congress' preemptive intent"); *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153,

1167 (11th Cir. 2008) ("Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute.").

Second is field preemption. *English*, 496 U.S. at 79, 110 S. Ct. at 2275. "[I]n the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.*, 110 S. Ct. at 2275.

> Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.*, 110 S. Ct. at 2275 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947)) (alteration omitted). "Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, __ U.S. __, __,132 S. Ct. 2492, 2502 (2012).

Third is conflict preemption, which occurs when "state law is pre-empted to the extent that it actually conflicts with federal law." *English*, 496 U.S. at 79, 110 S. Ct. at 2275. Conflict preemption exists "where it is impossible for a private party to comply with both state and federal requirements or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*, 110 S. Ct. at 2275 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)) (citations omitted). "[S]ince our decision in

*M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819), it has been settled that state law that conflicts with federal law is 'without effect.'"  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981)); *see Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011) (recognizing "the proper preemption test asks whether there is a significant conflict between the state and federal statutes—that is, the test for conflict preemption"). The parties agree this case concerns conflict preemption, although they disagree on the resolution.[3]

---

[3] The dissent strays from conflict-preemption analysis by viewing this case from the perspective of the FWA and thereby attempting to recast it as concerning state-police powers and state-employment contracts, even injecting at-will employment.  Puzzling to us, the dissent supports her position with secondary authority, including law-review articles, a treatise, and nonbinding, distinguishable state and federal-district-court cases, when there are consistent Supreme Court, statutory-interpretive principles and federal-circuit precedent specifically supporting our decision that the at-pleasure provision of the NBA preempts the FWA.  This is a straightforward case of conflict preemption, a specific and different analysis from the state-law analysis the dissent pursues by piecing together excerpts from Supreme Court cases that do not concern conflict preemption.

Despite her state-law approach, the dissent understates the Florida Supreme Court decision, addressing the interaction of § 24 (Fifth) and state-employment contracts providing severance benefits.  *Citizens Nat'l Bank & Trust Co. v. Stockwell*, 675 So.2d 584 (Fla. 1996).  The subject bank officers were terminated under the at-pleasure provision of the NBA, when their employing national bank merged with another bank, which did not want to purchase existing employment contracts.  The Florida Supreme Court quotes § 24 (Fifth) and notes it has remained the same as it was when the bank officers executed their employment contracts providing severance benefits.  *Id.* at 586 & n.1.  While accepting the bank's ability to terminate the bank officers under § 24 (Fifth), the Florida Supreme Court distinguished and enforced the bank's *separate agreement* under state law to pay the officers' severance benefits should they be terminated under the NBA, as they were.  "*Because there is no limitation on the power of a bank to remove its officers, this result is completely consistent with the provisions of the National Bank Act*."  *Id.* at 586 (emphasis added).  Therefore, the Florida Supreme Court, which definitively decides Florida law, including the FWA, should this issue be presented, already has recognized that § 24 (Fifth) cannot be interpreted to require a bank to be liable for wrongful

6

B. Preemption Analysis

"Pre-emption fundamentally is a question of congressional intent," which requires statutory interpretation. *English,* 496 U.S. at 78-79, 110 S. Ct. at 2275. "As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S. Ct. 1534, 1537 (1982) (citations and internal quotation marks omitted). "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citation and internal quotation marks omitted). "The 'plain' in 'plain meaning' requires that *we look to the actual language used in a statute, not to the circumstances that gave rise to that language*." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001) (emphasis added); *see Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013) ("[A] statute's plain language controls unless it is *inescapably* ambiguous." (citation and internal quotation marks omitted)). "Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history." *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (en banc); *see*

discharge of a bank officer terminated under the at-pleasure provision of the NBA, irrespective of state-employment contracts.

7

*United States v. Gonzales*, 520 U.S. 1, 6, 117 S. Ct. 1032, 1035 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").

"We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable"; "*we must give effect to the text Congress enacted*." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228, 128 S. Ct. 831, 841 (2008) (emphasis added). As the Supreme Court has instructed "time and again," courts presume Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992) (citing Supreme Court cases). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[4] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000) (citations and internal quotation marks omitted). The text of § 24 (Fifth), resulting in the disposition of this case, is not absurd.

---

[4] The effect of implementing the dissent's statutory interpretation would be to have this court rewrite 12 U.S.C. § 24 (Fifth), enacted in 1864 as part of the NBA, to permit terminated Florida bank officers to bring whistleblower actions under the FWA, Fla. Stat. § 448.102(3), enacted in 1991. The Supreme Court has recognized a congressional statute may have stringent results, but, unless the results are absurd, that is not sufficient reason for courts to rewrite a congressional statute. "Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted. . . . The disposition required by the text here, though strict, *is not absurd. It is for Congress, not this Court, to amend the statute . . . ." Dodd v. United States*, 545 U.S. 353, 359, 125 S. Ct. 2478, 2483 (2005) (emphasis added).

Under these principles of statutory construction, we must assess the alleged competing terms of the NBA and the FWA to resolve the conflict-preemption question presented.  In relevant part, the NBA provides

> a national banking association . . . shall have power . . . [t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places.

12 U.S.C. § 24 (Fifth) (emphasis added); *see Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 526 (9th Cir. 1989) (recognizing the purpose of § 24 (Fifth) is to give national banks "the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust" without state regulatory interference).[5]  In contrast, the FWA provides "[a]n employer may not take any

---

[5] In the 1864 NBA, Congress made a policy decision that granting banks broad discretion to dismiss specified bank officials was necessary to maintain public trust:

> [I]t is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them.  High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys.  When it has once been secured, and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows.  It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or a president of a bank, spreads through the community in which he lives, scares the depositers, and threatens immediate financial ruin to the institution.  In such a case it is necessary to the prosperity and success—to the very existence—of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence.  In our opinion, the provision of the act of congress to which we have referred was inserted, ex industria, to provide for this very contingency.

retaliatory personnel action against an employee because the employee has . . .

[o]bjected to, or refused to participate in, any activity, policy, or practice of the

employer which is in violation of a law, rule, or regulation." Fla. Stat. §

448.102(3).

Concluding federal statutes regulating national banks preempted conflicting

state legislation preventing selling insurance in small towns, the Supreme Court

noted:

> Congress would not want States to forbid, or to impair significantly,
> the exercise of a power that Congress explicitly granted. To say this is
> not to deprive States of the power to regulate national banks, *where
> (unlike here) doing so does not prevent or significantly interfere with
> the national bank's exercise of its powers*.

---

*Westervelt v. Mohrenstecher*, 76 F. 118, 122 (8th Cir. 1896); *see Stockwell*, 675 So.2d at 586
("'Public trust' is assuaged by filling major decisionmaking positions with individuals the bank
deems more capable than those it terminates; the [employment] contracts at issue do not prevent
the bank from so doing.").

The dissent maintains § 24 (Fifth) is no longer applicable law, because it was enacted 150
years ago. Under that rationale, statutes and cases, such as *Gibbons v. Ogden,* 22 U.S. (9
Wheat.) 1 (1824), *M'Culloch v. Maryland*, 17 (4 Wheat.) 316 (1819), and *Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803), enacted or decided in the nineteenth century would be obsolete
and not reliable precedent today. Instead, longevity shows a statute or case has withstood the test
of time without change.

The NBA is a series of congressional acts of which the subject 1864 Act is a part. *See* 1
Stat. 191, ch. 10 (1791); 3 Stat. 266, ch. 44 (1816); 13 Stat. 99, ch. 106 (1864); 18 Stat. 123, ch.
343 (1874); 63 Stat. 298, ch. 276, § 1 (1949); Pub. L. 86-114, § 3(b), 73 Stat. 263 (1959); Pub. L.
86-230, § 1(a), 73 Stat. 457 (1959). While § 24 has been amended numerous times, § 24 (Fifth)
never has been amended, just as 12 U.S.C. § 38, enacted in 1874, never has been amended.
Congress is presumed to "know the law" and has convened many times since a particular statute
was enacted or case decided. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97, 99 S. Ct. 1946,
1957-58 (1979). Because Congress has not seen fit to amend § 24 (Fifth) in 150 years, it remains
unchanged, reliable law.

*Barnett Bank*, 517 U.S. at 33, 116 S. Ct. at 1109 (emphasis added). Applying "ordinary legal principles of pre-emption," the Court decided "the federal law would pre-empt that of the State." *Id.* at 37, 116 S. Ct. at 1111. The Florida Supreme Court has reached the same conclusion concerning the at-pleasure provision of § 24 (Fifth). *Citizens Nat'l Bank & Trust Co. v. Stockwell*, 675 So.2d 584, 586 (Fla. 1996) (recognizing the at-pleasure provision of § 24 (Fifth) precludes any "limitation on the power of a bank to remove its officers" under the NBA).

The Fourth Circuit has addressed precisely the issue in this case: whether the at-pleasure provision of the NBA preempts a state-law claim for wrongful discharge. *Schweikert v. Bank of Am., N.A.*, 521 F.3d 285 (4th Cir. 2008). Schweikert, a bank officer as Senior Vice President at the Chevy Chase, Maryland, office of Bank of America ("BOA"), was terminated by the Board of Directors for failing to cooperate with internal and external investigations of the bank. *Id.* at 287. Although Schweikert brought his action for wrongful or abusive discharge in Maryland state court, BOA removed his case to federal court for the District of Maryland on diversity jurisdiction. *Id.* BOA moved to dismiss Schweikert's complaint and argued it was preempted by the NBA at-pleasure provision. The district judge determined the NBA at-pleasure provision "precluded state common law wrongful discharge claims." *Id.* at 287-88.

In affirming, the Fourth Circuit noted its precedent interpreting the analogous at-pleasure provision of the Federal Home Loan Bank Act ("FHLBA")[6] in a wrongful discharge action, based on state law. *Id.* at 288 (citing *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir. 1993)). In *Andrews*, the Fourth Circuit concluded: "Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees. Any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress." 998 F.2d at 220. Consistent with *Andrews* in the FHLBA context, the Fourth Circuit in *Schweikert* specifically held "the at-pleasure provision of the NBA preempts state law claims for wrongful discharge." *Schweikert*, 521 F.3d at 288-89.

Other circuits that have considered this issue have reached the same conclusion. The Ninth Circuit noted § 24 (Fifth)

> has been consistently interpreted to mean that *the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ. An agreement which attempts to circumvent the complete discretion* of a national bank's board of directors to terminate an officer at will *is void as against public policy*.

*Mackey*, 867 F.2d at 524 (citing cases) (emphasis added). The Sixth Circuit also has recognized "§ 24 (Fifth) has consistently been construed by both federal and

---

[6] The FHLBA, 12 U.S.C. § 1432(a), and the Federal Reserve Act ("FRA"), 12 U.S.C. § 341 (Fifth), have analogous at-pleasure provisions, which give the board of directors of a federal bank authority to dismiss its officers "at pleasure." The FHLBA and the FRA, however, are separate acts from the NBA, about which this case is concerned.

state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure." *Wiskotoni v. Mich. Nat'l Bank-West*, 716 F.2d 378, 387 (6th Cir. 1983) (citing cases); *accord Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 394 (6th Cir. 2004).

In a conflict-preemption case, the Supreme Court has recognized "federal law may be in irreconcilable conflict with state law," such that "[c]ompliance with both statutes" results in a "physical impossibility," causing the state law to "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barnett Bank*, 517 U.S. at 31, 116 S. Ct. at 1108 (citations, internal quotation marks, and alteration omitted). Consistent with the Fourth Circuit in *Schweikert* and other federal circuit courts that have decided this issue,[7] we hold the at-pleasure provision of the NBA preempts Wiersum's claim

---

[7] The dissent imagines far-fetched scenarios that could result from interpreting § 24 (Fifth) as it was written by Congress, if the board of directors of a national bank were to dismiss officers for personal predilections rather than business reasons. That has not been the experience for 150 years, manifested by decisions of other federal circuit courts that have addressed this issue during that time. *See, e.g., Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 (3d Cir. 2004) ("We now explicitly join the approach uniformly adopted by other courts considering this issue. We hold that the Federal Reserve Act precludes enforcement against a Federal Reserve Bank of an employment contract that would compromise its statutory power to dismiss at pleasure, and prevents the development of a reasonable expectation of continued employment.").

The gist of the dissent's position is a state-employment contract can trump an act of Congress, even in a conflict-preemption situation. *There is no contest*. The NBA is the congressional act that governs all national banks in the United States. The ability of the board of directors of a national bank to dismiss its officers "at pleasure" is clear and unequivocal, as the federal-circuit courts that have addressed this issue have concluded. 12 U.S.C. § 24 (Fifth).

13

under the FWA for wrongful discharge under Florida law, because the FWA is in direct conflict with the NBA, as the district judge decided.[8]

**AFFIRMED.**

---

[8] For the first time on appeal, Wiersum makes arguments he did not raise before the district judge: the NBA at-pleasure preemption should be limited to contractual claims; reversal is required under the partial-preemption doctrine, because his FWA claim is consistent with the provisions of 12 U.S.C. § 5567 within § 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010; his termination was contrary to 12 U.S.C. § 1831j, according a national-bank employee whistleblower protection only if a complaint procedurally first was made to the appropriate federal agency or the Attorney General, 12 U.S.C. § 1831j(a)(1), which Wiersum did not do; and a state-law retaliation claim based on underlying banking law is not preempted, despite an analogous federal whistleblower statute. *See* Appellant's Br. at 22-37. We strongly disagree the excerpt quoted in the dissent from Wiersum's opposition to U.S. Bank's motion to dismiss in district court specifically addresses any of these issues raised on appeal. Instead, she characterizes the objection he has made to application of the at-pleasure provision of § 24 (Fifth) from the outset of his case, which the district judge addressed, and we have decided for this circuit. We have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citations and internal quotation marks omitted). Therefore, Wiersum has waived all his arguments on appeal that he did not raise first before the district judge, and we will not address them.

The Amicus Brief of the National Employment Lawyers Association ("NELA"), Florida Chapter predicts speculative and conclusory effects on state employment laws, if we decide the NBA preempts the FWA, as if he had no federal remedy. But NELA fails to recognize that Wiersum could have brought his action under the applicable federal-banking-whistleblower statute, 12 U.S.C. § 1831j. Section 1831j, however, requires a whistleblower employee or former employee of a national bank to report the alleged wrongdoing to the agency that regulates the bank or to the Attorney General. 12 U.S.C. § 1831j(a)(1). Wiersum did not comply with either of these prerequisites for a § 1831j action, which is the reason he unsuccessfully attempts to proceed instead under the FWA.

14

MARTIN, Circuit Judge, dissenting:

Today's majority holds that when Congress passed the National Banking Act (NBA) in 1864, it intended—150 years later—for the three words "dismiss at pleasure" to preempt Marc Wiersum's retaliation claim under the Florida Whistleblower's Act, Fla. Stat. § 448.101–.105. If the majority is right, those three words will also serve to preempt every state employment-law protection not mirrored in federal law for thousands of bank officers in this Circuit. Based on my analysis of the history and meaning of the NBA, the majority's interpretation vastly overestimates Congress's limited intent when it included those three words. And in doing so, the majority's holding works to disrupt the careful balance between state and federal interests that our preemption doctrine is meant to protect. For these reasons, I respectfully dissent.

## I.

Mr. Wiersum's case presents the question of whether the dismiss-at-pleasure language in the NBA preempts a bank officer's claim under the Florida Whistleblower's Act. Mr. Wiersum sued under this Florida statute, claiming that he was fired from his job as a bank officer in retaliation for reporting what he believed were his employer's violations of federal banking law. In evaluating whether a federal law preempts state law, the "question is basically one of congressional intent. Did Congress, in enacting the Federal Statute, intend to

15

exercise its constitutionally delegated authority to set aside the laws of a State?  If so, the Supremacy Clause requires courts to follow federal, not state, law."  Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 30, 116 S. Ct. 1103, 1107 (1996); see also Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992) ("The purpose of Congress is the ultimate touchstone of pre-emption analysis." (quotation marks omitted)).  Important for this case, we have been warned not to read laws "as if they were written today, for to do so would inevitably distort their intended meaning."  Goldstein v. California, 412 U.S. 546, 564, 93 S. Ct. at 2303, 2313 (1973).  Thus the question presented here is whether, "against the background" of 1864, id., Congress intended for the NBA to set aside state employment-law protections like the Florida Whistleblower's Act for bank officers.  The majority says yes.  I cannot agree.

Although Congress left us "no record of any discussion of [the dismiss-at-pleasure provision], or of any specific purpose or motive it might have had in enacting it," a careful analysis of the historical context of the NBA's enactment suggests that its purpose was "quite narrow."  Goonan v. Fed. Reserve Bank of N.Y., 916 F. Supp. 2d 470, 492–93 (S.D.N.Y. 2013) (quotation omitted) (interpreting identical language from the Federal Reserve Act).  As one commentator has explained, this dismiss-at-pleasure provision "was a limited effort to deal with a specific problem: the risk that national banks would, either

explicitly or by common law implication, contractually restrict their ability to discharge bank officers."  Miriam Jacks Achtenberg, Note, <u>Rereading the National Bank Act's 'At Pleasure' Provision: Preserving the Civil Rights of Thousands of Bank Employees</u>, 43 Harv. C.R.-C.L. L. Rev. 165, 172 (2008).[1]  In creating our national banking system, Congress recognized that just one person serving as a bank officer could develop a reputation as untrustworthy or dishonest, and thereby put at risk the reputation of the bank where he worked, or even the banking system as a whole.  <u>See</u> <u>Westervelt v. Mohrenstecher</u>, 76 F. 118, 122 (8th Cir. 1896).  To avoid that risk, Congress insisted that banks have the freedom to dismiss officers "at pleasure" rather than being locked into a long-term employment relationship with an officer bringing disrepute upon the bank.  This meant only that bank officers are "at will" employees, as opposed to "term" employees.[2]

It is understandable that in 1864, Congress would have seen this as necessary.  In the eighteenth and early nineteenth century, "[e]mployment for an unspecified term was presumed to be annual, and dismissal within that term had to

---

[1] The majority finds it "[p]uzzling" that I "support[] [my] position with secondary authority, including law-review articles."  Panel Op. at 6 n.3.  However, where legal scholars have researched and written about areas of the law in a way that helps me more fully understand and appreciate the questions presented in an appeal I am considering, I feel no shame about consulting them.

[2] Such an interpretation is confirmed by the synonymous use of the terms "at pleasure" and "at will" during the late-nineteenth century.  <u>See</u> Achtenberg, <u>supra</u>, at 172 ("In the nineteenth century, the terms were used interchangeably, and both referred to a single concept: employment under a contract containing no express or implied contractual limit on the employer's right to discharge them.").

be for cause." M.B.W. Sinclair, Employment at Pleasure: An Idea Whose Time Has Passed, 23 U. Tol. L. Rev. 531, 541 (1992). As Professor Sinclair notes:

> We are accustomed to thinking of employment law in the United States as basically a regime of employment at will. . . . But this was not the back-drop against which the "at pleasure" language was drafted and enacted . . . . [T]he relevant legal background of the "at pleasure" language is not a regime of employment at will but of annual employment, unless subject to contrary agreement.

Id. at 540–41; see also Jay M. Feinman, The Development of the Employment at Will Rule, 20 Am. J. Legal Hist. 118, 125 (1976) (highlighting the "rise of employment at will" in the mid-nineteenth century and noting that it was not until "the 1870's [that] the presumption of yearly hiring was recognized as anachronistic"). For instance, although a treatise in the late nineteenth century declared that "a general or indefinite hiring is prima facie a hiring at will," H. Wood, A Treatise on the Law of Master and Servant § 134, at 272 (1877), an earlier version of that same treatise stated that "[w]here no time is limited either expressly or by implication, for the duration of a contract of hiring and service, the hiring is considered . . . in point of law a hiring for a year," see C. Smith, Treatise on the Law of Master and Servant 53 (1852).

This backdrop of laws governing employment in 1864 strongly suggests that Congress simply intended to free banks from the constraints of the year-term presumption that existed in employment law at the time. My understanding is consistent with that of other courts that have examined the history of the NBA.

18

See, e.g., Goonan, 916 F. Supp. 2d at 494 ("Congress's apparent purpose in enacting the [NBA's] dismiss at pleasure [provision] was protection of public confidence in [banks] by eliminating a potential threat to that trust—specifically, contractual obligations under state law that could force [banks] to retain corrupt or incompetent employees."); Katsiavelos v. Fed. Reserve Bank of Chi., No. 93 C 7724, 1995 WL 103308, at *4 (N.D. Ill. Mar. 3, 1995) (holding that the Illinois Human Rights Act is not preempted "because the 'at pleasure' language . . . only serves to pre-empt state law created contractual employment rights"); Mueller v. First Nat'l Bank of Quad Cities, 797 F. Supp. 656, 663 (C.D. Ill. 1992) ("Th[e] latitude [given to banks in the 'at pleasure' provision] was intended in a contractual sense."). Under this interpretation, the NBA is clearly intended to preempt state common-law contract claims that would restrict a bank's ability to fire an officer "at will." But there is simply no evidence that Congress intended for the NBA to preempt a state anti-retaliation statute like the Florida Whistleblower's Act, which prevents employers from taking "retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102. Indeed, the Florida Whistleblower's Act is consistent with Congress's 1864 goal to ensure public confidence in our banking

19

system.  I would hold that the NBA does not preempt Mr. Wiersum's claim.[3]

## II.

The majority quite rightly references our obligation to look to the plain meaning of the language of the statute.  I believe "at pleasure" plainly means "at will."  The majority, however, gives the words of the NBA, "dismiss at pleasure," quite an expansive purpose.  It says that "any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress."  Panel Op. at 11 (quoting Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214, 220 (4th Cir. 1993)).   In doing so, the majority ignores our long-standing presumption against preemption.  See, e.g., Cipollone, 505 U.S. at 518, 112 S. Ct. at 2618 ("[W]e must construe [federal] provisions in light of the presumption against the pre-emption of state police power regulations."); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").  In the face of this presumption, I see no reasoned basis to hold that

---

[3] The majority insists that I would "rewrite 12 U.S.C. § 24 (Fifth)," Panel Op. at 8 n.4, or that I believe "§ 24 (Fifth) is no longer applicable law," Panel Op. at 9 n.5.  Neither is true.  I simply seek to apply principles of statutory interpretation to understand what "at pleasure" meant at the time of the NBA's passage.  Based on my analysis, I am confident that the term in the statute as written requires only that banks employ officers at will, nothing more.

20

the NBA trumps the protections provided by the Florida Whistleblower's Act.[4]

But setting aside this presumption against preemption, the majority's conclusion necessarily relies on two "questionable interpretive moves." Goonan, 916 F. Supp. 2d at 496. First, the Florida statute was passed almost a century and a half after Congress enacted the NBA.[5] The passage of so much time makes it "implausible to conclude that the drafters of the [NBA] could have possessed any sort of 'intent' whatsoever with respect to preemption of state (or federal) [whistleblower] laws." Id. Judge Oetken observes "that authors, including Congress, simply cannot possess 'intentions' or express 'meaning' with respect to concepts or institutions unavailable in their lived historical moment." Id. at 497. I agree with Judge Oetken that it takes quite an "adventurous approach" to read Congress' 1864 intent as preempting the Florida Whistleblower's Statute. Id.

Second, the majority justifies its interpretation by declaring that "Congress made a policy choice that granting banks broad discretion to dismiss specified bank officials was necessary to maintain public trust." Panel Op. at 7 n.3. But the majority's enforcement of this broad policy choice by preempting current state laws causes an incongruous result. The NBA speaks only to a bank's power to

---

[4] The majority suggests that Mr. Wiersum could have brought an action under "the applicable federal-banking-whistleblower statute, 12 U.S.C. § 1831j." Panel Op. at 14 n.8. However, Section 1831j "does not by its own effect foreclose additional obligations imposed under state law." Cipollone, 505 U.S. at 518, 112 S. Ct. at 2618.

[5] The Florida Whistleblower's Act was passed in 1991. See 1991 Fla. Sess. Law Serv. Ch. 91-285, § 5.

21

dismiss an officer.  In contrast, the Florida Whistleblower's Statute prohibits "any retaliatory personnel action" against employees who object to their employers' violations of the law, including "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment."  Fla. Stat. §§ 448.102, 448.101(5).  Under the majority's reasoning, then, Congress assured that banks can dismiss officers freely to maintain public trust, but at the same time left states free to protect employees from demotion, temporary suspensions, and other punishments short of firing.  This renders the NBA a strangely under-inclusive attempt to achieve the goals that the majority believes Congress had in mind.

### III.

The majority does not respond to these shortcomings in its analysis.  First, it fails to address Mr. Wiersum's argument that the NBA was only intended to preempt state-contract-law claims because it says he raised this argument for the first time on appeal.  Panel Op. at 14 n.8.  But the argument is right there in his District Court papers, in black and white.  Mr. Wiersum's Response in Opposition to U.S. Bank's Motion to Dismiss in the District Court includes the following passage:

> [U.S. Bank's] defense assumes that "at pleasure" and "at will" are different.  This is not the case.  The NBA . . . only voids employment

22

law contracts for a specified term for banking officers, and its "at pleasure" provision adds nothing more than what the law is in "at will" states. These terms of art mean that an employer may terminate an employee for a good reason, no reason or even a bad reason. The terms do not allow for illegal terminations.

Resp. in Opp'n 1–2, Dec. 6, 2013, ECF No. 9.[6]  Beyond this excerpt, Mr. Wiersum cited directly to the Achtenberg article I quote above, see id. at 3, which lucidly describes "the National Banking Act's limited intent: to prevent banks from entering into non-cancelable fixed-term employment contracts with their officers and to trump any common law presumption that such a contract existed." Achtenberg, supra, at 166.  Mr. Wiersum quite obviously made the argument he pursues here on appeal: that the NBA only preempts state-law claims that seek to enforce term-employment contracts for bank officers.

But even if we ignored Mr. Wiersum's filings in the District Court and found that he had not made the precise argument below that he makes on appeal, the Supreme Court has told us that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." Yee v. City of Escondido, Cal., 503 U.S. 519, 534, 112 S. Ct. 1522, 1532 (1992).  Giving life to this idea in Yee, the Court

_____

[6] The majority can "strongly disagree," Panel Op. at 14 n.8, with this excerpt from Mr. Wiersum's District Court filing, but it says what it says.  He clearly raised before the District Court his argument that "the NBA at-pleasure preemption should be limited to contractual claims." Id.  The majority is right that Mr. Wiersum did not clearly raise before the District Court his argument under the partial-preemption doctrine.  But I would not adopt Mr. Wiersum's foreclosed partial-preemption theory.  It is his argument that the NBA's preemptive effect should be limited to contractual claims that I would have this Court adopt.

23

held that "[p]etitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate claims. They are, rather, separate arguments in support of a single claim—that the ordinance effects an unconstitutional taking."  Id. at 534–35, 112 S. Ct. at 1532. Likewise here, Mr. Wiersum's argument that the NBA was only intended to preempt state contract law claims is simply one argument in support of his broader claim that the NBA does not preempt the Florida Whistleblower's Act.  The preemption claim was clearly presented to and ruled upon by the District Court.

Next, the majority looks to cases from the Fourth and Sixth Circuits. However, these cases have very little supporting their broadly preemptive interpretation of the NBA.  In Andrews, the Fourth Circuit concluded without explanation that "Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees," and that "[a]ny state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress."  998 F.2d at 220.  The Andrews court cited to the Sixth Circuit's decision in Ana Leon T. v. Federal Reserve Bank of Chi., 823 F.2d 928 (6th Cir. 1987) (per curiam), which also held without any elaboration that the dismiss-at-pleasure provision "preempts any state-created employment right to the contrary."  Id. at 931.  Similarly, in Schweikert v. Bank of Am., N.A., 521 F.3d 285 (4th Cir. 2008), the Fourth Circuit declared that "the at-pleasure provision of

24

the NBA preempts state law claims for wrongful discharge." Id. at 288–89. The Schweikert court cited Andrews without any further analysis.

Of course appellate judges often look to sister Circuits for guidance. However in light of the criticism the Fourth and Sixth Circuits have received for their cursory treatment of this important issue, I hoped that our Court would look more deeply. See, e.g., Kroske v. U.S. Bank Corp., 432 F.3d 976, 985 (9th Cir. 2005) (disagreeing with "the Sixth Circuit's summary conclusion" because it contained "little analysis of the issue"); Moodie v. Fed. Reserve Bank of N.Y., 831 F. Supp. 333, 336 (S.D.N.Y. 1993) ("[T]he Sixth Circuit's pronouncement gives no basis for its opinion and sets forth no policy reasons for its holding."). Neither the Sixth- nor the Fourth-Circuit opinions even mention the idea that the NBA was only meant to ensure that bank officers were treated as "at will" employees and not to preempt all state employment protections for bank officers. I would prefer that our panel not simply rely on these cases and their conclusory assertions of preemption as controlling in Mr. Wiersum's case.[7]

---

[7] The majority says that the Florida Supreme Court addressed this issue in Citizens National Bank & Trust Co. v. Stockwell, 675 So. 2d 584 (Fla. 1996). See Panel Op. at 6 n.3. Not so. In Stockwell, bank officers sought to enforce their employment contracts and won, even in the face of the bank's reliance on the NBA. The Florida Supreme Court held that the NBA "does not preclude enforcement of severance benefits contained in officers' employment contracts." Id. at 585 (emphasis added). In so holding, the Court emphasized that although severance benefits will be enforced, a bank "can still fire its officers at will without giving rise to suits for damages based on the termination." Id. at 586 (emphasis added). In any event, even if the Florida Supreme Court had addressed the very subject at issue here, its analysis of the preemptive effect of the NBA—a federal statute—would not bind us. See, e.g., RAR, Inc. v.

25

In this same way, I also believe the majority too readily discounts Mr. Wiersum's reliance on "nonbinding, distinguishable state and federal-district-court cases, when there are consistent Supreme Court, statutory-interpretive principles and federal-circuit precedent specifically supporting [its] decision that the at-pleasure provision of the NBA preempts the [Florida Whistleblower's Act]." Panel Op. at 6 n.3. This is a case of first impression for our Court. Neither has the Supreme Court addressed this issue, so no prior precedent binds us here. For that reason, overlooking the reasoning of non-circuit-court opinions seems shortsighted, where some district-court decisions offer us a far more detailed and persuasive analysis of the preemptive force of the NBA compared to the terse conclusions of the Fourth- and Sixth-Circuit opinions.

## IV.

The consequences of the majority's ruling are worrying. The majority denies bank officers—of which there are thousands nationwide, see Achtenberg, supra, at 165—the protection of state employment laws. Most obviously, bank officers are no longer protected by anti-retaliation statutes like the Florida law at issue here. But neither will bank officers any longer enjoy the protection of state and local anti-discrimination laws that offer protections the federal anti-

---

Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997) ("Although state court precedent is binding upon us regarding issues of state law, it is only persuasive authority on matters of federal law.").

discrimination regime does not.

For instance, in New York, employers are prohibited from firing an employee because of "an individual's political activities," "an individual's legal use of consumable products," or "an individual's legal recreational activities." N.Y. Lab. Law § 201-d(2)(a)–(c).  Yet under the majority's rule, banks would be empowered to fire their officers with impunity when one donates to the political party of his choice, or smokes cigarettes, or hunts.  And while some states and localities prohibit firing an employee because of her sexual orientation, the majority ruling will allow banks in those jurisdictions to fire an officer for being gay.  Absent clear Congressional intent, I would not so easily strip away these legal protections which state legislatures saw fit to put in place.[8]

I am also troubled by the implications of the majority's reasoning on the ability of states to freely exercise their police powers without federal intrusion. Before today's decision, "we start[ed] with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress."  Rice, 331 U.S. at 230, 67 S. Ct. at

---

[8] The majority says such consequences are "far-fetched" because they have "not been the experience for 150 years, manifested by decisions of other federal circuit courts that have addressed this issue during that time."  Panel Op. at 13 n.7.  Yet decisions of other federal circuit courts prove just the opposite.  For example, in Ana Leon T., the Sixth Circuit held that the Federal Reserve Act's dismiss-at-pleasure provision preempted the plaintiff's claim for discriminatory discharge on the basis of national origin, in violation of the Michigan Elliott-Larsen Act, Mich. Comp. Laws § 37.2101.  823 F.2d at 929.  Even if this were not true, the majority has offered no reasoned basis why the Florida Whistleblower's Act is preempted but all other state employment-law protections are not.

27

1152; see also Bond v. United States, ___ U.S. ___, ___, 134 S. Ct. 2077, 2088–89 (2014) ("It has long been settled . . . that we presume federal statutes do not . . . preempt state law." (citations omitted)).  This rule makes good sense.  "When pre-emption of state law is at issue, we must respect the 'principles that are fundamental to a system of federalism.'"  Johnson v. Frankell, 520 U.S. 911, 922, 117 S. Ct. 1800, 1807 (1997) (alteration adopted) (citation omitted).  In other words, we did not casually usurp the power of state legislatures to enact laws without a clear and countervailing command from Congress.  Yet after today's decision, Acts of Congress enacted in centuries past can apparently reemerge—like mummies from their tomb—to preempt state laws that no lawmaker could have imagined at the time the Acts were passed.  This application of the preemption doctrine alters the balance between the federal government and the sovereign states in a way generally avoided by this Court.  See Johnson v. Governor of Fla., 405 F.3d 1214, 1251 n.35 (11th Cir. 2005) (en banc) ("If Congress wishes to alter the balance of power [between the federal government and the states], its intention must be unmistakably clear."); see also Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S. Ct. 2395, 2401 (1991) (noting that "it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides" the "usual constitutional balance of federal and state powers" (quotation marks omitted)).

28

V.

Based on my analysis of Congress' intent at the time of passage, I would find that the National Banking Act does not preempt state employment law protections like the Florida Whistleblower's Act for bank officers.  I therefore respectfully dissent.